O

# United States District Court
# Central District of California

| | |
|---|---|
| CLIFFORD MERLO,<br><br>            Plaintiff,<br><br>    v.<br><br>DENIS MCDONOUGH,<br><br>            Defendant. | Case № 2:19-cv-05078-ODW (JCx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [63]** |

## I.  INTRODUCTION

Plaintiff Dr. Clifford Merlo brings this action against Defendant Denis McDonough, Secretary of Veterans Affairs, U.S. Department of Veterans Affairs (the "VA"), alleging the VA discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA").  (First Am. Compl. ("FAC") ¶ 1, ECF No. 17.)  Dr. Merlo also claims the VA retaliated against him in violation of the ADEA for his complaints relating to the alleged age discrimination.  (*Id.*)  The VA moves for summary judgment on Dr. Merlo's claims.  (Mot. Summ. J. ("Mot." or "Motion"), ECF No. 63.)  For the reasons discussed below, the Court **GRANTS** the VA's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.

Dr. Merlo, born in 1953, was a radiation oncologist in the Department of Radiation Oncology (the "Department") at the VA West Los Angeles Healthcare Center from January 2012 through May 2015. (Def. Statement of Uncontroverted Facts ("DSUF") 1–2, ECF No. 63-1.) Dr. Ahmad Sadeghi was Dr. Merlo's immediate supervisor and the official that decided to hire Dr. Merlo. (DSUF 3–4.) Dr. Sadeghi was ultimately responsible for making Department personnel decisions, including hiring and firing. (Pl. Additional Material Facts ("PAMF") 41, 41B, ECF No. 66-1.)

### A. Dr. Merlo's Employment with the VA

In 2011, Dr. Sadeghi hired Dr. Merlo on a fee-for-service basis. (FAC ¶ 10; Decl. Ahmad Sadeghi ("Sadeghi Decl.") ¶ 5, ECF No. 64-1.) In August 2012, Dr. Merlo was hired in a thirteen-month temporary appointment. (DSUF 8.) Dr. Merlo's temporary appointment was subsequently extended several times, to March 31, 2014, October 31, 2014, and finally May 1, 2015. (Decl. Tanae McNeal ("McNeal Decl.") ¶¶ 14–16, Exs. 16–18, ECF No. 64-2.) In July 2013, January 2014, and August 2014, Dr. Merlo received performance reviews completed on preprinted forms, each with a written note to the effect that it was "good to have him" in the Department. (PAMF 72; Decl. G. Samuel Cleaver ("Cleaver Decl.") Ex. 62, ECF No. 67-1.)

Although these performance reviews were generally positive, Dr. Merlo often sent suggestive emails to colleagues such as one telling his female colleagues come to work "au natural," and another commenting, "Oh, I bet you'd like to stick me." (DSUF 9.) He also routinely raised day-to-day issues with higher-ups like the Secretary of the VA or the VA National Director of Radiation Oncology without consulting Dr. Sadeghi. (DSUF 11, 18.) His superiors counseled him more than once, about a patient complaint against him, his improper charting, and his inappropriate emails. (DSUF 10, 19–21; Decl. Dean C. Norman ("Norman Decl.") ¶ 9, ECF No. 64-3.)

In August 2014, Dr. Sadeghi renewed Dr. Merlo's temporary appointment for a final term, to expire on April 30, 2015. (PAMF 54; Cleaver Decl. Ex. 52.) Dr. Sadeghi believed that Dr. Merlo's appointment could not be renewed again beyond this final extension because of limitations set by the VA. (DSUF 22; Sadeghi Decl. ¶ 21.) He also believed it should not be renewed again in light of Dr. Merlo's cumulative conduct. (DSUF 23; Sadeghi Decl. ¶ 21.)[2]

## B. DR. MERLO'S COMPLAINTS

Dr. Merlo asserts that, in November 2014, Dr. Sadeghi told Dr. Merlo that he, Dr. Merlo, was getting older and needed to retire to make room for two UCLA residents. (PAMF 55.) The VA disputes this assertion. (Def. Resp. PAMF 55, ECF No. 74-1; Sadeghi Decl. ¶ 18 ("I never mentioned age because I am in this business for many years and I know that this is a very sensitive issue[].").)

On December 12, 2014, Dr. Merlo emailed Dr. Sadeghi, several higher-ups, and an EEO Specialist, complaining about the November comment and requesting a permanent position. (PAMF 59.) From February 2015 to May 2015, Dr. Merlo complained informally about the November comment and continued to ask for a permanent position. (PAMF 60–62, 64.)

In April and May 2015, the parties mediated and agreed that (1) Dr. Merlo's appointment would be extended to May 30, 2015, and (2) Dr. Merlo would acknowledge in a signed Memorandum of Understanding that "the reason for the separation [of employment] will be recorded as expiration of appointment." (PAMF 63, DSUF 24–25.) Dr. Merlo's last day with the VA was May 30, 2015. (*See* PAMF 77.)

On June 26, 2015, Dr. Merlo submitted a formal EEO complaint, of which Dr. Sadeghi was notified on August 12, 2015. (PAMF 64, 65; Cleaver Decl. Ex. 55.)

---

[2] Dr. Merlo purports to dispute these facts, which concern only what Dr. Sadeghi believed. (*See* Pl. Statement Genuine Disputes ("PSGD") 22–23, ECF No. 66-1.) Nevertheless, for the reasons discussed below including those in section IV.A., the Court finds that Dr. Merlo fails to adequately support the dispute.

### C. JOB ANNOUNCEMENTS

In June 2015, the VA posted a job announcement for a permanent radiation oncologist in the Department. (DSUF 27.) Dr. Merlo applied but was not selected. (PAMF 79; DSUF 30.) The successful applicant withdrew their application in October 2015, so the VA closed that posting and issued a new job announcement to advertise the position again. (DSUF 30–32.) Dr. Merlo applied and was not selected. (PAMF 83–84.) On November 15, 2016, Dr. Sadeghi made the decision to offer the position to the successful applicant, who accepted and was hired. (DSUF 33.)

### D. PROCEDURAL BACKGROUND

The Court has discussed the proceedings of Dr. Merlo's administrative complaint in its prior orders and does not repeat that history here. (*See* Order Mot. Dismiss & Recons. ("Order") 3, ECF No. 28.) After receiving the Final Agency Decision in favor of the VA, Dr. Merlo filed this action for age discrimination and retaliation in violation of the ADEA. (*See* FAC; Compl., ECF No. 1.) The Court previously established that the scope of Dr. Merlo's claims is limited to age discrimination after March 1, 2015, and retaliation for age discrimination complaints. (*See* Order 8 n.2, 12.) The VA now moves for summary judgment as to both claims. (Mot.) The Motion is fully briefed. (Opp'n, ECF No. 66; Reply, ECF No. 74.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* Though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134. The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to Local Rules 56-1 through 56-3, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts" that should set out "the material facts as to which the moving party contends there is no genuine dispute." A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that [they] are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."

## IV. PRELIMINARY ISSUES

Before considering the merits of the Motion, the Court first addresses Dr. Merlo's egregious disregard for this Court's rules and procedures. The VA is not blameless in this respect, and its failings must similarly be addressed. The Court also considers the parties' filings related to evidentiary objections.

### A. DISREGARD OF RULES AND PROCEDURES

The Scheduling and Case Management Order ("Scheduling Order") requires parties to "prepare papers in a fashion that will assist the Court." (Scheduling Order 6, ECF No. 35.) Accordingly, each paragraph in a Statement of Uncontroverted Facts, Statement of Genuine Disputes, or Statement of Additional Material Facts "should contain a narrowly focused statement of fact . . . [and] address a single subject in as concise a manner as possible." (*Id.*) "Where the opposing party is disputing the fact in whole or part, the opposing party must . . . [list] the opposing party's evidence controverting the fact." (*Id.*) "No argument should be set forth in this document." (*Id.* at 7.) "[D]isputing a material fact without any reasonable basis for doing so [or] identifying additional facts in opposition to the motion without any reasonable basis for believing that the additional facts will materially affect the outcome of the motion" is grounds for sanctions under Federal Rule of Civil Procedure 11. (*Id.*)

#### 1. Plaintiff's Noncompliance

Dr. Merlo's Statement of Genuine Disputes and Additional Material Facts violates all of the above rules, making it extremely onerous for the Court to identify what facts are truly in dispute and whether competent evidence supports any genuine issue. For instance, Dr. Merlo often purports to dispute a fact put forward by the VA, but then includes that fact in his own statement of additional material facts. (*Compare* PSGD 5 (disputing that "Dr. Sadeghi was the official that decided not to renew Plaintiff's VA appointment"), *with* PAMF 41B (asserting "Dr. Sadeghi remained the ultimate decision maker concerning personnel issues" in the Department).) Additionally, rather than cite to *evidence* in support of his purported disputes,

Dr. Merlo either relies on improper argument and legal conclusions or, perhaps most egregiously, repeatedly cites a block of his additional asserted facts. (*See, e.g.*, PSGD 5 (citing PAMF 52–57, 66–73, 81, 93; 55–66, 94–95; 80–93; 69–72; 54, 76, 76A, 92).) Another method of "response" Dr. Merlo favors is to simply ignore the asserted fact and argue his own version of events. (*See, e.g.*, PSGD 18–22.)

The Court is inclined to strike the Opposition and related documents as a sanction for Dr. Merlo's egregious disregard of rules and procedures. *See* Fed. R. Civ. P. 11(c). However, as judicial resources have already been expended to untangle Dr. Merlo's obfuscation, the Court declines to strike the offending filings. Nevertheless, the Court disregards Dr. Merlo's disputes of fact to the extent they cite to his own additional facts rather than competent evidence, are nonresponsive, or include improper argument and legal conclusions. Further, the Court disregards Dr. Merlo's additional material facts to the extent they address more than a single subject, fail to cite evidentiary support, or include improper argument and legal conclusions.

Adding to the confusion, Dr. Merlo filed <u>five Notices of Errata</u>, purportedly "correcting" previous errors. (*See* Notices of Errata, ECF Nos. 71, 86, 88, 92, 93.) The first of these was filed three days after his opposition brief was due, and rather than "correct clerical errors," it changes, supplements, and adds new evidence. This is improper and prejudicial to the VA's preparation of its reply. Accordingly, the Court **STRIKES** Dr. Merlo's first Notice of Errata, (ECF No. 71). *See Johnson v. Cate*, No. 1:10-cv-00803-AWI-MJS (PC), 2015 WL 5321784, at *3 (E.D. Cal. Sept. 10, 2015) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223–24 (9th Cir. 2007)). As for the other Notices of Errata, (ECF Nos. 86, 88, 92, 93), the Court sees no benefit in considering them. These materials only further highlight Dr. Merlo's counsel's carelessness, while unnecessarily burying the Court in reams of paper.

    *2.    Defendant's Noncompliance*

The VA is not blameless. The Scheduling Order directs that all assertions of fact in the Memorandum of Points and Authorities "should be supported with citations

to the paragraph number in the Separate Statement that supports the factual assertions." (Scheduling Order 9.) Nevertheless, *more than half* of the VA's factual assertions in its Memorandum cite to only evidence and not to the Separate Statement. (*See* Mot. 3.) The VA's failure to cite the SUF contravenes the Court's rules and denies Dr. Merlo the opportunity to clearly dispute asserted facts. Accordingly, as a point of clarification, the Court does not rely on any factual assertion in either party's Memoranda that is not directly supported by the DSUF or the PAMF.

## B. EVIDENTIARY MATTERS

A party objecting to evidence is required to submit a separate memorandum in the specified format, identifying the objectionable evidence and providing very brief argument regarding the objections. (Scheduling Order 8.) Dr. Merlo nominally objects to two of the VA's uncontroverted facts in his PSGD, but files no separate memorandum with his purported objections to the evidence. The Court therefore disregards Dr. Merlo's objections, both as unsupported and as improperly raised.

The VA did file a separate memorandum with its objections to Dr. Merlo's evidence. (ECF No. 74-2.) Where the objected evidence is unnecessary to the resolution of the summary judgment motion or supports facts not in dispute, the Court need not resolve those objections here. To the extent the Court relies on objected-to evidence in this Order, those objections are **OVERRULED**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding with only necessary rulings on evidentiary objections).

Finally, Dr. Merlo's Response to the VA's Evidentiary Objections includes improper argument and additional evidence, and the Court accordingly **STRIKES** it as an impermissible surresponse. (ECF No. 75.)

## V. DISCUSSION

The VA moves for summary judgment on Dr. Merlo's claims for age discrimination and retaliation in violation of the ADEA.

## A. AGE DISCRIMINATION

On a defendant's motion for summary judgment, claims of age discrimination under the ADEA are evaluated pursuant to the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] *See Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). Under the *McDonnell Douglas* framework, "the burden of production first falls on the plaintiff to make out a prima facie case of discrimination." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005). To establish a prima facie case of age discrimination under the ADEA, "the plaintiff must show that he was: (1) a member of a protected class [age 40–70]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996). Plaintiff's prima facie case requires only a minimal showing. *Coghlan*, 413 F.3d at 1094.

Once the plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). This is not a burden of persuasion and does not involve credibility. *Wallis*, 26 F.3d at 892. If the employer provides a nondiscriminatory reason, the presumption of discrimination falls away. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The burden then rests with the plaintiff, who is "afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (internal quotation marks omitted). A plaintiff may meet this burden with direct or circumstantial evidence, or both. *Coghlan*, 413 F.3d at 1094–95.

---

[3] Claims of discrimination under the ADEA, Title VII, and California's Fair Housing and Employment Act are assessed similarly. *See Earl v. Nielsen Media Rsrch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888 (9th Cir. 1994). Therefore, cases involving these Acts are relevant to the ADEA analysis.

The adverse actions at issue here are the May 2015 nonrenewal of temporary appointment and the October 2015 and November 2016 nonselection for the permanent radiation oncologist position. The Court need not decide whether Dr. Merlo can establish a prima facie case for either because it is clear that his claim for age discrimination fails by the final stage of the burden-shifting framework. *See Chavez v. JP Morgan Chase & Co.*, 731 F. App'x 592, 594 (9th Cir. 2018) (affirming summary judgment where the plaintiff failed to carry her burden to show pretext).

To meet its initial burden, the VA must produce evidence of its legitimate business reasons for not renewing Dr. Merlo's temporary appointment. No assessment of credibility may take place concerning defendant's offered nondiscriminatory reasons at this stage. *See Wallis*, 26 F.3d at 892. Here, the VA's evidence includes Dr. Sadeghi's declaration indicating he believed the appointment could not be renewed again due to VA policy and also that it should not be renewed due to Dr. Merlo's cumulative unsatisfactory conduct and disinterest in modern techniques and research. (Sadeghi Decl. ¶¶ 9–13, 15–17, 21.) Dr. Sadeghi's declaration also sets forth the VA's legitimate business reasons for not selecting Dr. Merlo for the permanent radiation oncologist position, including that Dr. Sadeghi believed the selected candidates were better qualified, demonstrated a desired interest in modern techniques and research that Dr. Merlo did not, and that Dr Merlo's conduct during his employment with the VA had not been entirely satisfactory. (*Id.* ¶¶ 26–27.) The VA thus meets its burden to offer legitimate nondiscriminatory reasons for the nonrenewal and nonselection. *See Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1275–76 (9th Cir. 1981) (finding selection of a better qualified applicant was a legitimate nondiscriminatory reason).

The presumption of discrimination thus falls away and the burden rests with Dr. Merlo to show the VA's reasons are pretextual. Dr. Merlo fails to carry this burden, with either direct or circumstantial evidence.

### 1. *Direct Evidence of Pretext*

Direct evidence is "evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.*

Dr. Merlo contends he has produced direct evidence of discriminatory intent, specifically the statement by Dr. Sadeghi that Dr. Merlo was getting older and should retire to make room for two UCLA residents. (PAMF 55.) However, even accepting as true the disputed assertion that Dr. Sadeghi made such a comment, *see Scott*, 550 U.S. at 378, it is not "direct evidence" because additional inference is needed to find that Dr. Sadeghi failed to renew or rehire Dr. Merlo due to his age. Dr. Merlo contends the remark was made in November 2014, which is months after the terminal extension of Dr. Merlo's appointment was made in August 2014, and months before his appointment expired in May 2015. Dr. Merlo points to no other specific similar remark by Dr. Sadeghi suggesting animus during this time period or any time prior. Such isolated and stray remarks, not directly tied to the adverse employment action, constitute "'at best weak *circumstantial* evidence' of discriminatory animus." *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 747 (9th Cir. 2003) (emphasis added); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1284 (9th Cir. 2000) (collecting cases where stray remarks were found to be insufficient to create a genuine issue of pretext). Therefore, Dr. Merlo does not demonstrate pretext through direct evidence.

### 2. *Circumstantial Evidence of Pretext*

The Court next examines whether Merlo submits circumstantial evidence sufficient to raise a triable issue as to pretext. Circumstantial evidence "is evidence that requires an additional inferential step to demonstrate discrimination." *Coghlan*, 413 F.3d at 1095. A plaintiff may establish pretext with circumstantial evidence (1) by affirmatively demonstrating an employer's bias, or (2) by negating the employer's

proffered explanation as being "unworthy of credence." *Id.* (quoting *Texas Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). When evidence of pretext is circumstantial, it must be "specific and substantial" to raise a triable issue as to pretext. *Id.*

Dr. Merlo first seeks to establish Dr. Sadeghi's animus affirmatively, with evidence that Dr. Sadeghi told him he was getting older and should retire. (*See* PAMF 55.) He also seeks to show the VA's proffered reasons are unworthy of credence, with evidence that the VA gave conflicting reasons for not renewing his appointment and that his performance while employed with the VA was satisfactory. (*See* PAMF 68, 70, 72.)

As discussed above, isolated stray remarks not tied to the adverse employment action constitute only weak circumstantial evidence and without more are insufficient to raise a triable issue of fact. *See Pottenger*, 329 F.3d at 747. This is particularly so where, as here, there is also evidence of the plaintiff's poor performance or the plaintiff offers no other indicia of discriminatory intent. *See Holtzclaw v. Certainteed Corp.*, 795 F. Supp. 2d 996, 1014 (E.D. Cal. 2011) ("[T]hese isolated and stray remarks are insufficient to establish discrimination without other indicia of discriminatory intent." (internal quotation marks omitted)); *Chavez*, 731 F. App'x at 595 (finding remark from manager, "you should be retired by now," did not raise triable issue of fact where employer submitted evidence of poor performance).

Dr. Merlo next argues that the VA gave conflicting reasons for the decision not to further renew his temporary appointment, suggesting discriminatory motive. (*See* PAMF 68.) This argument is unavailing. "Although 'fundamentally different justifications for an employer's action . . . give rise to a genuine issue of fact with respect to pretext,'" *Pottenger*, 329 F.3d at 746, the reasons identified by Dr. Merlo "are not incompatible, and therefore not properly described as 'shifting reasons,'" *Nidds*, 113 F.3d at 918. Dr. Sadeghi believed a temporary appointment could be renewed only three or four times, which Dr. Merlo's appointment had. (Sadeghi Decl.

¶ 21; Cleaver Decl. Ex. 72 ("Sadeghi 2017 Dep.") 148:10–24.) Moreover, both Dr. Sadeghi and Dr. Norman submit declaration testimony and supporting evidence that Dr. Merlo's cumulative conduct was unsatisfactory. (Sadeghi Decl. ¶¶ 9–17; Norman Decl. ¶¶ 6–12.) Dr. Steve P. Lee told the EEO investigator that Dr. Merlo's term was about to end and there was "no further need for the professional services that [Dr. Merlo] could provide." (Cleaver Decl. Ex. 59, ¶ 5.) These approaches to Dr. Merlo's termination may vary, but they are not "fundamentally different" or altogether contradictory justifications; therefore, they fail to raise a triable issue as to pretext. *See Foster v. City of Oakland*, 649 F. Supp. 2d 1008, 1021 (N.D. Cal. 2009) (citing *Nidds*, 113 F.3d at 918) (finding the plaintiff failed to raise a triable issue as to pretext where the defendant's "explanations were not incompatible").

Finally, Dr. Merlo argues the evidence shows his job performance was satisfactory when his appointment expired. He points to the VA's response to his request for admission ("RFA") during the EEO proceeding and the three VA performance reviews. (PAMF 70, 72.) In the EEO proceeding, the VA responded affirmatively to an RFA that Dr. Merlo was performing his job satisfactorily; however, the VA also objected to the request as "vague and ambiguous" and denied a similar RFA in the instant case. (*See* Cleaver Decl. Exs. 60–61.) And the performance reviews are merely check-box forms with a brief written comment and were all completed prior to Dr. Merlo's final six-month extension. (*See id.* Ex. 62.) The reviews constitute only weak circumstantial evidence of pretext in light of their timing, their generalized nature requiring little reflection, and the contrasting evidence of cumulative unsatisfactory conduct. *See Pottenger*, 329 F.3d at 746 (finding that positive performance reviews constituted only weak circumstantial evidence of pretext where evidence of negative performance was also present). Although this evidence may be sufficient to permit a jury to find that Dr. Merlo's performance was satisfactory in some respects, the evidence is weak, and in the context of Dr. Merlo's otherwise weak evidentiary showing, it is insufficient to render pretext triable. *See*

1 *Coghlan*, 413 F.3d at 1095 (circumstantial evidence of pretext must be "specific and substantial"); *Coleman*, 232 F.3d at 1285 (finding the plaintiff's evidence sufficient to raise a question of fact regarding disputed statements, but still insufficient to raise a question of fact regarding pretext).

This conclusion is bolstered by the "same actor" inference. "[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a [few years], a strong inference arises that there was no discriminatory action." *Coghlan*, 413 F.3d at 1096. It is undisputed that Dr. Sadeghi is responsible for all personnel decisions in the Department.[4] (PAMF 41B.) He made the initial appointment and terminal decision within two to three years. (*See* PAMF 54 (Dr. Sadeghi requested the terminal extension in August 2014); DSUF 2 (initial appointment 2012 and last day 2015).) Therefore, the same actor inference applies. Dr. Merlo does not satisfy the "extraordinarily strong showing of discrimination" required to defeat this inference. *Coghlan*, 413 F.3d at 1097.

For these reasons, the Court concludes that Dr. Merlo fails to present sufficient evidence of pretext to survive summary judgment. *See Schechner v. KPIX-TV*, 686 F.3d 1018, 1027 (9th Cir. 2012) (affirming summary judgment where same actor inference weakened plaintiff's showing of pretext).

**B.  RETALIATION**

Dr. Merlo also asserts a retaliation claim under the ADEA, which makes it unlawful for an employer to retaliate against an employee for opposing unlawful age discrimination. *See* 29 U.S.C. § 623(d). The *McDonnell Douglas* burden-shifting framework is also used to analyze ADEA retaliation cases. *See Wallis*, 26 F.3d at 889. The plaintiff first must establish a prima facie case of retaliation; the defendant

---

[4] Dr. Sadeghi made the decisions to hire Dr. Merlo and to not renew his temporary appointment. (DSUF 4, 5; PAMF 41, 41B.) Dr. Merlo attempts to contest that Dr. Sadeghi made the nonrenewal decision, but he fails to support the dispute. (*See* PSGD 5.) Regardless, the VA's evidence indisputably establishes that Dr. Sadeghi was responsible for both decisions. (*See* Sadeghi Decl. ¶¶ 4, 21, Ex. 1; Norman Decl. ¶ 16; Decl. Steve P. Lee ¶¶ 12–13, 17, 22, Exs. 28, 31, ECF No. 64-4.)

employer must then proffer legitimate, nonretaliatory reasons for the adverse action; and the plaintiff must show that the defendant's reasons are pretextual. *See id.*

1. *Nonrenewal*

To establish a prima facie case of retaliation, a plaintiff must establish that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between his protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).[5] "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that h[is] protected activity was the likely reason for the adverse action." *Patel v. Cal. Dep't Pub. Health*, No. 2:15-cv-02471-KJN, 2018 WL 4006554, at *19 (E.D. Cal. Aug. 17, 2018) (alteration in original) (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)). The nonrenewal-retaliation claim fails at the start because Dr. Merlo does not raise a triable issue as to a causal link.

The undisputed facts and evidence establish that Dr. Merlo first complained of age discrimination on December 12, 2014. (*See* PAMF 59; Cleaver Decl. Ex. 53 at EA038.) But it is also undisputed that, as of November 1, 2014, the adverse employment action of a terminal extension was already taken against him. (DSUF 13; Sadeghi Decl. ¶ 8; McNeal Decl. ¶ 16, Ex. 18.) And before that, in August 2014, Dr. Sadeghi and Dr. Lee requested that Dr. Merlo's temporary appointment expire in 2015. (DSUF 12; PAMF 54; Cleaver Decl. Ex. 52.) Therefore, the protected activity could not possibly have been the cause of the adverse employment action and, as a result, the VA is entitled to judgment as a matter of law on the causal link element. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (finding the plaintiff "ha[d] not shown that any causal connection exists" where the defendant learned of the protected activity at least one day *after* the adverse employment decision).

---

[5] "[T]he ADEA anti-retaliation provision is parallel to the anti-retaliation provision contained in Title VII" so *Villiarimo* and other Title VII cases are relevant to the ADEA analysis. *Poland v. Chertoff*, 494 F.3d 1174, 1180 n.1 (9th Cir. 2007) (internal quotation marks omitted).

As Dr. Merlo fails to raise a triable issue regarding causation, the nonrenewal-retaliation claim fails and the VA is entitled to judgment as a matter of law.

### 2. Nonselection

Like the age discrimination claim discussed above, the nonselection-retaliation claim fails at the pretext stage: Dr. Merlo does not carry his burden to show the VA's legitimate business reasons for his nonselection were pretextual for retaliation. A plaintiff may establish pretext for retaliation in the same ways as discrimination, by persuading the court that an employer's motivation was more likely retaliatory or by showing that "the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004) (quoting *Burdine*, 450 U.S. at 256).

Dr. Merlo refers to his discrimination pretext arguments as also establishing pretext for retaliation. (Opp'n 21 (referring to the grounds "discussed above").) The Court has addressed these arguments. Dr. Merlo offers only weak circumstantial evidence, which is insufficient to establish pretext. Accordingly, for the same reasons discussed above herein, these arguments fail to establish pretext for retaliation. *See supra*, § V.A.

Additionally, Dr. Merlo relies on temporal proximity to support causation and pretext for the nonselection-retaliation. (Opp'n 17–18.) "[T]iming alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the [adverse employment action] must have occurred fairly soon after the employee's protected expression." *Holtzclaw*, 795 F. Supp. 2d at 1020 (first quoting *Villiarimo*, 281 F.3d at 1065 (internal quotation marks omitted); and then citing *Breeden*, 532 U.S. at 273–74 (stating temporal proximity must be "very close")). It is the closing of an open position that constitutes an adverse employment action. *See Rowell v. Sony Pictures Television Inc.*, 743 F. App'x 852, 854 (9th Cir. 2018) (citing *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986) (stating that the "'adverse employment decision' is the closing of the job opening" to plaintiff)).

Here, Dr. Merlo submitted a formal complaint of age discrimination on June 26, 2015, of which Dr. Sadeghi received notice on August 12, 2015. In October 2015, the VA closed the first posting without hiring anyone and issued a new announcement for the same position. It was not until November 2016 that Dr. Sadeghi hired the successful applicant and the permanent radiation oncologist position finally closed. Thus, at least two months passed between the most recent protected activity (August 2015) and the first closing (October 2015), and fourteen months passed before the final adverse decision (November 2016). Fourteen months "is simply too long" to create an inference of pretext. *See Villiarimo*, 281 F.3d at 1065 (finding eighteen months too long and collecting cases finding twelve, eight, five, and four months too long to raise in inference of retaliation). And although two months may be sufficiently close in time to raise an inference of retaliation, such tenuous temporal proximity, without more, constitutes only weak circumstantial evidence. *See Breeden*, 532 U.S. at 273–74; *Holtzclaw*, 795 F. Supp. 2d at 1020. Even considered together with the weak circumstantial evidence "discussed above," it does not amount to the "substantial" evidence of pretext necessary to satisfy Dr. Merlo's burden. *See Coghlan*, 413 F.3d at 1095.

Dr. Merlo fails to present sufficient evidence of pretext to survive summary judgment on the nonselection-retaliation claim.

## VI.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's age discrimination and retaliation claims under the ADEA. (ECF No. 63). All remaining dates and deadlines are **VACATED**.

**IT IS SO ORDERED.**

March 25, 2022

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**